HARGER *v.* WATSON.

1. BROKERS—COMMISSIONS—CONTRACTS—OPTIONS.

   Where a broker advised the owner of hotel property that he had a prospective buyer, asking about price and terms, and naming the party, and the owner telegraphed giving the price and stating that he had six buyers, later stating by letter his terms and closing with the broker's offer of $38,000 for the property, upon commission of $1,000, and where the broker arranged with other purchasers to take the hotel property through a deed to and in the name of the one purchaser mentioned, who was to execute a quit-claim deed to the parties in interest, the broker was entitled to recover his commission, although the sale could

not be completed because the property became involved in litigation so that the owner could not convey a clear title.[1]

2. Same.

The broker's duty is performed when he. has found a purchaser that is ready, willing, and able to purchase upon the terms specified, and his right to commissions is not defeated if the title proves to be defective or unmerchantable.[2]

Error to Oakland; Smith, J. Submitted April 23, 1913. (Docket No. 16.) Decided July 9, 1913.

Assumpsit by Edwin S. Harger against William C. Watson for broker's commissions. Judgment for plaintiff on a directed verdict. Defendant brings error. Affirmed.

*Perry & Lynch,* for appellant.

*Peter B. Bromley,* for appellee.

KUHN, J. The plaintiff sues to recover a commission claimed by him to have been earned in obtaining a purchaser for defendant's hotel property in the city of Pontiac, known as the Hodges Hotel property, and also to recover $29 paid for an abstract of title to such property. The defendant resides in Pasadena, Cal., and all communications between the plaintiff and the defendant with reference to the property were in writing in the form of letters and telegrams. At the close of the evidence, the defendant's counsel requested the court to instruct the jury to render a verdict in favor of the plaintiff for $29 and interest, amounting to

---

[1] On the question of the broker's right to commissions where sale fails because of defects in employer's title, see notes in 3 L. R. A. (N. S.) 576 and 24 L. R. A. (N. S.) 1182. And as to the right to compensation upon procuring customer to take an option, see note in 43 L. R. A. (N. S.) 91.

[2] As to when real estate broker is considered as procuring cause of sale or exchange, generally, see note in 44 L. R. A. 321.

$29.65, as this item was not contested. The court denied this motion, but instructed the jury to find a verdict for the plaintiff for $1,029.65, being the amount of commission claimed and the item of the abstract, and such a verdict was accordingly rendered by the jury, and judgment had thereon.

The only errors relied upon and discussed by counsel for defendant are the refusal of the court to instruct as requested, and in instructing the jury to render a verdict for the amount they did.

The first communication between the parties was a letter dated April 10, 1912, from the plaintiff to defendant:

"REAL ESTATE OFFICE OF EDWIN S. HARGER.
        "No. 7 North Saginaw Street.
                "PONTIAC, MICH., April 10th, 1912.
"W. C. WATSON,
        "Pasadena, California.
*"Dear Sir*—Mr. E. Howland requested me to write you concerning your hotel here. He wished to know if it were for sale, and if you did want to sell what you would ask for it. If you were about to do anything would like to hear from you.
                "Yours respectfully,
                        "EDWIN S. HARGER."

In reply the following telegram was received:

                "PASADENA, CALIFORNIA, April 17th.
"EDWIN S. HARGER,
        "No. 7 North Saginaw Street,
                "Pontiac, Michigan.
"Hotel price $38,000. Wire immediately, have six purchasers.                "W. C. WATSON."

Harger sent the following telegram in reply:

                        "April 18th, 1912.
"W. C. WATSON,
        "936 Magnolia Ave.,
                "Pasadena, California.
"Think man will take property. Wants thirty-six hour option. Will you give it? Answer.
                "EDWIN S. HARGER."

In reply he received the following:

"PASADENA, CALIFORNIA, April 18th.
"EDWIN S. HARGER,
        "Pontiac, Mich. .
"Make sale.  One thousand for you.  Send draft for balance Crown City National Bank, Pontiac.  On receipt will send deed.  Answer immediately.
                                "W. C. WATSON."

In the above telegram it is undisputed that by "Pontiac" was intended "Pasadena," the Crown City National Bank being in Pasadena.  To this Harger replied that the property was sold, and that $37,000 would be paid to Watson and $1,000 retained by him upon receipt of an abstract of title showing property free and clear of leases and incumbrances.  In reply the following communication was received from Watson:

"PASADENA, CALIFORNIA, April 22d.
"EDWIN S. HARGER,
        "Pontiac, Michigan.
"Will accept $37,000 net to me for Hodges property and give warranty deed subject to lease to Henry A. Thomas, and subject to all taxes and assessments since January first, 1912.  Have receipt for taxes paid January 8th, 1912, and also paid, November 30th, last paving tax in full.  Will furnish abstract, which you may order at my expense.  My offer must be accepted at once and money deposited in First Commercial Bank at Pontiac, to my credit, within fifteen days.
                                "W. C. WATSON."

It is the claim of the plaintiff that when Mr. Howland learned of the Thomas lease he refused to take the property, and the plaintiff then immediately procured other purchasers who were willing to buy the property subject to this lease.  To these purchasers Harger gave the following writing:

"PONTIAC, MICH., April 26, 1912.
"Received of John B. Brown, Jay S. Stockwell, Jr., Arthur E. McLintock and Frances R. Harger, the sum

of $1,000, to apply upon the Hodges House property, located at the corner of Saginaw and Pike streets, in the city of Pontiac, Michigan; the balance of said $37,000 to be paid to me on or before the 7th day of May, 1912.  Abstract to be furnished by me on or before said date, showing good and merchantable title.

"WILLIAM C. WATSON,
"By Edwin S. Harger, Agent."

It is further claimed that an agreement was had between the prospective purchasers and Howland and Harger that the previous arrangement should stand, and that the deed was to come on in Howland's name, and that he was to then make a quitclaim to the new purchasers.  The money, $37,000, was paid to the First Commercial Bank within the time specified in letter, Watson was so notified, and he forwarded the deed.  Before the deed was actually delivered, however, to the purchasers it was discovered that a suit by attachment levy on this property had been started, and also a *lis pendens* filed in a suit for specific performance of an alleged contract made by Watson with another purchaser to convey the property to him.  Because of these suits involving the title to the property the purchasers refused to carry out the agreement, the bank at Pontiac so notified the defendant, and returned the deed to the bank at Pasadena.

It is the contention of the appellant that the authority of Harger to sell the property was limited to a sale to Howland, and no one else was thought of by Watson as a purchaser.  It would seem that this question should be determined from the correspondence between the parties, and in the very first telegram sent by Watson to Harger he speaks of having six purchasers.  There is no doubt in our minds that if these suits had not been started no question would have been raised about the title going to the new purchasers through Howland.  This position of appellant has all the earmarks of an afterthought.

Harger was not to blame for the failure to make the sale. He did everything necessary on his part to complete it within the terms agreed upon. He had the parties ready to accept the title, and the money was in the bank. They were entitled to a merchantable title, and clearly Harger should not be deprived of the result of his efforts because of the inability of Watson to give such a title, without any fault on Harger's part. The rule of law applicable is well stated by Mr. Mechem in his work on Agency in speaking of the duty of the real estate broker, par. 966:

"His duty is performed when he has found a purchaser who is ready, willing, and able to purchase upon the terms specified."

In this case there can be no question that the terms of Watson were complied with, and the purchasers procured by Harger were ready, willing, and able to purchase upon the terms specified. *Hannan* v. *Moran,* 71 Mich. 261 (39 N. W. 909); *Wood* v. *Wells,* 103 Mich. 320 (61 N. W. 503).

The charge of the trial court was a proper one, and the judgment is affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.